129 F.3d 1268
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory M. SHEPECK, Defendant-Appellant.
 No. 96-3771.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 16, 1997.
Decided Oct. 30, 1997.
 
 1
 Before Hon. John L. COFFEY, Circuit Judge, Hon. Frank H. EASTERBROOK, Circuit Judge Hon. Michael S. KANNE, Circuit Judge
 
 ORDER
 
 2
 Pursuant to a written plea agreement, Gregory M. Shepeck pleaded guilty to one count of manufacturing six directional mines without a license in violation of 26 U.S.C. §§ 5845(f), 5861(f), and 5871. In exchange for his plea, the government recommended a three-level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1. The district court sentenced Shepeck to 71 months' incarceration.[1] Shepeck's appellate attorney seeks to withdraw on the ground that there are no issues of merit to be raised on appeal. Anders v. California, 386 U.S. 738 (1967); United States v. Wagner, 103 F.3d 551 (7th Cir.1996). Because counsel's Anders brief is adequate on its face, we limit our review of the record to those issues raised in counsel's brief. Wagner, 103 F.3d at 553; United States v. Tabb, Nos. 97-1306 & 97-1585, slip op. at 2 (7th Cir. Sept. 22, 1997). Pursuant to Circuit Rule 51(a), Shepeck was notified of his counsel's actions and was given an opportunity to respond, which he did.
 
 
 3
 In January 1995, police officers were dispatched to Shepeck's residence in Neenah, Wisconsin, based on information from Shepeck's girlfriend and his psychiatrist that Shepeck had weapons in his apartment and threatened to booby trap his residence if anyone tried to enter. After the police arrived, Shepeck refused to surrender to the police and barricaded himself in his apartment for twelve hours, threatening to kill himself and the police officers. During the stand-off, the police heard two shot blasts. Shepeck eventually walked out of the front door holding a pistol to his head. When he moved the pistol, a police sniper shot and injured Shepeck.
 
 
 4
 Shepeck was taken to the hospital for treatment after which he gave a statement to the police. He stated that he had been threatening suicide because he had a fight with his girlfriend. He also stated that he wanted the police to kill him. He admitted that he had loaded weapons in his residence and tried to booby trap the door by using copper tubing, trip wires, and shotgun shells. Neenah police officers obtained a search warrant and entered Shepeck's residence to search for the booby trap and other devices. They found one trap that appeared to be live and contacted the Dane County Sheriff's Department Bomb Squad for assistance. The bomb squad located a mounted explosive device, three detonated devises, one assembled device without a shotgun shell, and another unloaded device. The officers also found materials for making booby trap devices in the basement, including copper pipes, clamps, and a soldering iron.
 
 
 5
 Counsel mentions several potential bases for an ineffective assistance of trial counsel claim. Strickland v. Washington, 466 U.S. 668 (1984). We agree with counsel that the record fails to support any such nonfrivolous claim.
 
 
 6
 A potential ineffective assistance of trial counsel claim raised by counsel is that Shepeck was not given the opportunity to speak at sentencing. In fact, the district court allowed Shepeck to speak, which he declined. He also wrote an extensive letter, attached to the presentence investigation report (PSR), explaining his actions on the day of the stand-off. Second, counsel raises the potential issue that Shepeck did not receive any benefit from pleading guilty. However, he was given a three-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.
 
 
 7
 The sentencing guideline for a violation of manufacturing directional mines is § 2K2.1(a)(5), which states that if the offense involved a firearm listed in 26 U.S.C. § 5845(a) the base offense level is eighteen, which the district court adopted. The district court also adopted the recommended two-level increase to the base offense level under § 22.1(b)(3) because Shepeck's offense included six firearms. Further, the district court increased the offense level by two because destructive devices--the six directional mines--were involved. The base level and increases are supported by the record; therefore, any appeal based on this calculation would be frivolous.
 
 
 8
 Appellate counsel and Shepeck both discuss the increase in Shepeck's offense level pursuant to U.S.S.G. § 22.1(b)(5) for his use or possession of firearms in connection with another felony offense. The sentencing court rejected the government's views on § 22.1(b)(5) and accepted the probation officer's recommendation. Because Shepeck could have been charged with recklessly endangering the safety of others in violation of Wisconsin Statute § 941.30[2] due to the events during the stand-off, the court concluded that if the police officers had attempted to enter Shepeck's home, they would have faced the danger of tripping the booby traps and directional mines. (Sent. Transcript at 4-5). In his Rule 51(a) response, Shepeck asserts that he did not have the requisite criminal intent for the underlying state felony. However, § 2K2.1(b)(5) does not require that the use or possession of a firearm in the other felony offense must be intentional, as the guideline language also includes the terms of "knowledge" and "reason to believe." U.S.S.G. § 22.1(b)(5); Cf. United States v. Rogers, 46 F.3d 31, 32 (7th Cir.1995) (defendant asserted that government needed to show a direct nexus between weapons and felony offense). In addition, under § 22.1(b)(5) the underlying felony does not have to be charged, nor must there be a conviction. U.S.S.G. § 2K2.1, note 7. Thus, any argument challenging the district court's conclusion that Shepeck used or possessed a firearm in connection with a possible state felony offense would be frivolous.
 
 
 9
 In his Anders brief, counsel asserts the potential claim that Shepeck was not sentenced in compliance with Federal Rule of Criminal Procedure 32(b)(6)(A). Rule 32(b)(6)(A) requires that the probation officer must furnish the PSR to the defendant, defendant's counsel, and the government no less than 35 days before sentencing unless waived by the defendant. Fed.R.Crim.P. 32(b)(6)(A); United States v. Walker, 118 F.3d 559, 561 (7th Cir.1997). As noted by the sentencing judge, the written plea agreement states that the parties waived the time requirements under Rule 32 relative to the PSR. (Plea p 6a). Accordingly, this argument is baseless.
 
 
 10
 Because we GRANT counsel's motion to withdraw, the appeal is DISMISSED as frivolous.
 
 
 
 [1]
 After sentencing, Shepeck requested that his trial counsel file a notice of appeal, which trial counsel failed to do in a timely manner. Shepeck then filed a motion under 28 U.S.C. § 2255. The district court concluded that Shepeck had established per se ineffectiveness of counsel as to the untimely notice of appeal. The court then vacated the prior judgment and issued a new judgment for appeal. Castellanos v. United States, 26 F.3d 717 (7th Cir.1994)
 
 
 [2]
 Wisconsin Statute § 941.30, recklessly endangering safety, reads:
 (1) First-degree recklessly endangering safety. Whoever recklessly endangers another's safety under circumstances which show utter disregard for human life is guilty of a Class D felony.
 (2) Second-degree recklessly endangering safety. Whoever recklessly endangers another's safety is guilty of a Class E felony.